**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **KIM ELLIS,** | § | |
| | § | |
| | § | **CIV. A. NO. _____** |
| *Plaintiff,* | § | |
| | § | **JURY DEMANDED** |
| **v.** | § | |
| | § | |
| **BLACK RIFLE COFFEE COMPANY** | § | |
| | § | |
| *Defendant.* | § | |

## ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Kim Ellis ("Ellis") is a female, African-American citizen of the United States.  Ellis has breast cancer.  She is currently 56 years of age.   Ellis complains of violations by Defendant Black Rifle Coffee Company (hereinafter "BRCC" or Defendant) of federal laws prohibiting retaliation and disability discrimination (actual and regarded as), race discrimination, sex discrimination and age discrimination.   She also complains of breach of contract in that BRCC removed her from her position as a direct report to Co-Chief Executive Officer Tom Davin and later terminated her employment without just cause, in violation of the employment agreement between the parties.

After BRCC recruited Ellis from another company, and after BRCC vetted her at the highest level, she started as SVP, Real Estate and Development on August 2, 2021.   Ellis accomplished a great deal during her short tenure with BRCC.  Unfortunately, in October 2021, Ms. Ellis received a diagnosis of breast cancer.  She reported this appropriately in October 2021. Ellis also reported her chemotherapy treatments and upcoming need for radiation treatments to her superiors.  She worked throughout it all (barely missing time for her surgery).  But, after professing concern and support for her, in March 2021, BRCC brought in a 36-year-old Anglo male without

cancer (Heath Nielson)("Nielson") to fill a position that would have been her promotion but for cancer, age, sex and race. Nielson treated Ellis badly, and his approach to at least two high-level African American employees of BRCC was hostile and discriminatory.  Ten days after Ms. Ellis complained to HR about Heath's treatment of her, BRCC terminated her employment.  Ellis seeks redress under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* as amended (the "ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq.*  Ellis also complains of BRCC's beach of the employment agreement between BRCC and Ellis, a matter over which this Court has pendant jurisdiction under 28 U.S.C. § 1367.

In support thereof Ellis respectfully states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Ellis is a female citizen of Cedar Hill, Dallas County, Texas.   Ellis is 56 years of age.

2.      Black Rifle Coffee Company (hereinafter "BRCC") is a publicly traded, NYSE-Listed company that employed Ellis and others in Texas. The causes of action asserted below arose from and are connected to purposeful acts by BRCC during Ellis's employment in Texas. BRCC may be served with process through its registered agent, CT Corporation System 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140.

3.      This court has jurisdiction to hear the merits of Ellis's claims under 28 U.S.C. §§ 1331 and 1343.

4.      The corporate headquarters of BRCC is at 1144 500 W., Salt Lake City, Utah 84101, and a substantial portion of the acts and omissions underlying Ellis's claims—including

the unlawful failure to promote and unlawful termination —occurred in Dallas, Texas. Venue is proper in this district and division under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

5.    BRCC was founded in December 2014.  BRCC specializes in online, direct-to-customer coffee subscription serve, which had over 100,000 subscribers as of 2020.  In addition to online sales, BRCC has physical coffee shops in Utah, Texas and Georgia.  The coffee is also distributed at some firing ranges, 5.11 Tactical stores, and Bass Pro Shops.  In 2017, BRCC expanded into Canada with a division based in Alberta.  In 2018, BRCC opened a new coffee roasting facility in Manchester, Tennessee and launched Coffee or Die Magazine, an online news and lifestyle publication that reports on military, veteran, law enforcement, and coffee topics.  On September 29, 2019, BRCC opened its first stand-alone licensed coffee shop in Boerne, Texas.  In February 2022, BRCC completed a merger with SilverBox Engaged Merger Corporation to raise funds for expansion and to go public and had a valuation of $1.7 billion.

6.    BRCC was at all times relevant to Ellis's claims and is now an "employer" within the meaning of 42 U.S.C. § 2000-e(b) and other federal statutes pertinent to this suit.

## BRCC RECRUITS ELLIS AND ELLIS PERFORMS WELL AT BRCC

7.    Ellis held a series of positions in real estate and business development from 1990 to the present.  In 2021 I was employed as Senior Vice President, Real Estate and Development by GameStop Corp., a Fortune 500 and S&P 500 company that operates more than 5,700 stores across 14 countries.

8.    In February 2021, Tom Davin ("Davin"), the Co-Chief Executive Officer of BRCC, with whom Ellis had previously worked for five years while she was Executive Vice President, Development for Panda Restaurant Group, Inc., contacted Ellis and began recruiting her to take a

position at BRCC. During the recruitment process, Ellis was interviewed by (among others), Evan Hafer ("Hafer"), the founder of BRCC who has served as its CEO since inception, Davin, Toby Johnson, Chief Operations Officer, and Greg Iverson, CFO. Hafer said to Ellis that BRCC's mission was "to build a great f_cking company." BRCC offered Ellis the job of Senior Vice President, Development by letter dated July 1, 2021, to report directly to Davin.

9.    Ellis worked diligently and had good performance with BRCC. From August 2, 2021 through December 17, 2021, by her calculations, Ellis travelled 83 out of 120 days, 70% of those calendar days, in more than 13 states. As a result of that travel and a lot of long hours and hard work, Ellis's team and she accomplished 50 approved real estate deals during that time. This is an impressive number in her industry. During Ellis's time working for BRCC, she never missed a number. During that time, BRCC never counseled, warned, or disciplined Ellis at any time. BRCC provided Ellis very positive feedback about her performance and ability until she began reporting to Nielson, who began working for BRCC in March 2022, and who provided no positive feedback, treated Ellis in a hostile, condescending manner, and made it clear to Ellis that he wanted Ellis out of the organization. It became evident to Ellis that BRCC brought in Nielson to avoid promoting Ellis, to replace Ellis, and to get Ellis out of the company because of her cancer diagnosis, her race, her age, and her gender.

**IN OCTOBER 2021, ELLIS WAS DIAGNOSED WITH CANCER**

10.    On October 12, 2021 Ellis found out that she had been diagnosed with breast cancer. In late October, Ellis told her boss, Davin, that she had cancer. Davin responded with concern for Ellis and he never showed more of a concern for the business than for Ellis. Ellis and Davin talked business during regularly scheduled 1 on 1 meetings and Ellis told Davin she would update him on her cancer situation if she had a progress report. On one occasion Ellis checked in

with Davin to be specifically sure that he didn't think her performance was being impacted.  Davin said no, that it wasn't.  Also, during a call, Ellis talked once to Davin and she referenced a separate conversation with Cristy Vertachnik ("Vertachnik") (Director of Real Estate) about the possibility of filing for FMLA leave.  Ellis said that she would if they wanted her to, but with the strict rules of FMLA Ellis would not be able to work at all (including phone calls).   Cristy said, "Even 30% of you is better than none."  Both Vertachnik and Ellis knew and discussed that working is not permitted on FMLA (including phone calls).  They laughed, and Davin said he agreed with Vertachnik's assessment.  In several conversations Ellis talked to Davin about her cancer recovery, where Ellis told Davin that continuing to work at BRCC was literally keeping her alive.  Ellis told Davin that engaging her mind was a distraction from the pain.  Ellis said this to Davin and others multiple times.

11.    In November 2022, Ellis informed Davin that her cancer surgery would be on December 17, 2021.  Davin was supportive.  Ellis also told Sandy Garner, VP of People and Culture, of her cancer situation.  At the time, Garner held the highest-ranking title in HR.  Garner is an African American female who left BRCC in February 2022, shortly before BRCC terminated Ellis.  In early April 2022, BRCC replaced Ms. Garner with Linda Brandt ("Brandt") as interim CHRO.  Brandt is an Anglo female.   Ellis also shared her cancer diagnosis and surgery plan with several members of her own team and the full Leadership staff of BRCC during a meeting on December 13, 2021.  Ellis's surgery was on December 17, 2022.

12.    Ellis returned to work from surgery on January 4, 2022 when she was no longer on narcotic pain medications that might have impaired her decision making.  Ellis participated in regular meetings, mostly on WEBEX with video.  Ellis was in pain through all of it.  Davin and

others said, "You wouldn't be able to tell that anything had changed," referring to Ellis's cancer. Maybe he was being nice, or maybe Ellis should have received an acting award.

13.     On February 7, 2022, Ellis had a summit meeting where James Truong ("Truong"), a subordinate of one of Ellis's direct reports, Anthony Thompson ("Thompson"), led a large part of the meeting.  The meeting covered how the development process works (front to end), the steps, of which one identified major milestone is to obtain soil reports (Geotech Reports) for all ground-up building sites.  One of the handful of mantras Ellis has used in business is "what gets measured, gets improved."  This means that Ellis believes in tracking everything that is trackable in the development process.  During the summit meeting, Truong did not indicate there was any issue with not obtaining, or delayed, soil reports. Obtaining these reports in a timely manner was a routine part of Truong's job, and there was no reason to suspect that Truong was somehow forgetting or failing to order the soil reports or that he needed to be reminded to be sure soil reports were promptly provided.

14.     Ellis conducted a follow-up summit meeting on March 7, 2022 with fewer attendees.  At these summits only architects, GCs and Thompson's staff, including Truoung, attended. Several other meetings were held on a weekly basis to track deliverable open dates. These meetings included every Monday meetings with internal BRCC development staff, architects, and GCs. At these meetings Ellis and others would go deep into the timeline of process and identify any issues that might impact opening schedules.  Any changes were then reported weekly.  They also held a meeting every Friday with over 40 BRCC staff where they would review the same information, but at a higher level.  At no time during either Summit, Monday or Friday meetings from November 2021 through March 18, 2022 did Truong indicate he had not ordered the soil reports.

15.     On February 11, 2022, Ellis started chemotherapy as part of her efforts to survive cancer.  Each session generally took up a full day, and Ellis would feel the worst on the day 4 after each treatment.  Ellis had three other chemotherapy sessions – on March 4, March 19, and March 29, 2022.  Ellis kept BRCC informed about all this.  Ellis put the chemo sessions on her calendar – to which BRCC had access.  Ellis had specific conversations with Davin about each session. Ellis communicated with Davin how she was trying to schedule her "most after-chemo sick day" to be on a Saturday so it didn't impact her work.  Ellis changed the appointments to Tuesdays instead of Mondays to make this accommodation.  Others who knew this included Vertachnick, Brandt, and Nielson.

### IN MARCH 2022, NIELSEN STARTED AT BRCC
### AS CHIEF RETAIL OFFICER AND THINGS CHANGED FOR ELLIS

16.     In early March 2022, Davin informed Ellis that his role with BRCC would be shifting and that Ellis would now report to a new hire at BRCC – Heath Nielson.  Nielson started serving as BRCC's Chief Retail Officer in March 2022.  **This was a job that Ellis would have been promoted into but for her cancer, her race, her age, and her gender.**  At the time Nielson was 36 years old, a much younger person than Ellis, a male, without cancer and Nielson was an Anglo who had far less experience and qualifications for the job he filled than Ellis.  For example, Nielson boasted at many meetings about how he has opened hundreds of stores.  This was weak compared to over a thousand stores Ellis had opened at that point in her career.  Ellis had opened 631 stores at Panda Express alone.

17.     Ellis was not told in advance that the job that Nielson got was available or that she might seek it, but Ellis would have sought the job BRCC gave to Nielson if given the opportunity. When BRCC hired Ellis, Davin told her that BRCC didn't want to have a C-role person in that role, and thus Ellis got the title of SVP.  Had Ellis known BRCC would insert an underqualified,

or less qualified individual into a C-role (Chief Retail Officer), Ellis would have insisted on the C suite title, a level that Ellis had attained before. BRCC brought in Nielson as the eventual replacement for Ellis after it learned that Ellis had cancer. Shortly after Nielson was in place, BRCC terminated Ellis.

18.    BRCC brought Nielson in (at a higher level than Ellis) as the replacement for Ellis. Nielson was aware of Ellis's cancer situation from the start. Nielson had a one-on-one meeting with Ellis – on March 21, 2022. After that, Nielson cancelled their meetings, without rescheduling them. The only other one-on-one meeting Ellis had with Nielson was on April 22, 2022. Ellis rescheduled this after the "regular" Monday meeting was repurposed. Even on this call, Nielson was house shopping in Dallas with his wife and truncated the call before the scheduled hour.

19.    Nielson was dismissive of Ellis from the time that he started. Nielson worked around Ellis. Nielson called Ellis's employees instead of allowing Ellis to do her job. Nielson left Ellis out of meetings and decision making. Nielson did not answer or respond to Ellis's phone calls. After Nielson canceled meetings, Ellis would send email updates to which Nielson would not respond. Nielson made Ellis feel like she truly was not there. Nielson failed to provide positive feedback to Ellis, treated Ellis in a hostile, condescending manner, and made it clear to Ellis that he wanted her out of the organization. At times Nielson treated Ellis as though she were a moron, and without courtesy, friendliness, or respect. Ellis observed that Nielson also displayed such negative attitudes and behavior toward one of Ellis's key, highly competent subordinates, Thompson, who was age 60 or older and African American. Ellis perceived both ageism and racism on the part of Nielson toward Thompson and herself. Ellis did not observe this same behavior by Nielson with any others on Ellis's staff, all Anglo, except one employee who may be Hispanic.

20.     On March 16, 2022 Ellis first heard of a concern that BRCC had not received a geotech report and that it was overdue.  Believing that where there is smoke there is fire, Ellis worried that this might be a mistake by James Truong.  Ellis was concerned that this might not be the only soil report that slipped through the cracks. Ellis followed up on it immediately.  On March 17, Ellis had brief conversations with Davin and Nielson.  Ellis told them that she may have found a miss that might impact BRCC's annual operating plan (AOP) which was being developed.  Ellis told Nielson (her new boss) that she was conducting a session on March 18th to get the facts.

21.     On March 18 Ellis held a "All Hands on Deck" meeting that lasted 7 hours.  Ellis made sure that Truong attended.  At the meeting they went through the stores, one by one.  Truong kept saying, "I hate to tell you this, guys, but we need a Geotech here."  Since the soil report takes 7 weeks from the time it is ordered, each time Truong failed to order a report for a store, BRCC lost 7 weeks of revenue for the affected store.  Whether Truong failed to order the reports deliberately or through negligence, this was a major failing by Truong.  On March 21, 2022, Truong ordered all the missing-but-needed soil reports and acknowledged his wrongdoing by resigning from BRCC.  Ellis reported all this immediately to Davin, Nielson and Finance.  Ellis's performance with respect to this negligence or mistake by Truong was very good.

22.     On March 21, 2022 Ellis had her only (ever) scheduled one-on-one meeting with Nielson. In that meeting, Nielson and Ellis discussed business matters.

23.     In the later portion of the March 21 meeting, Ellis told Nielson that they should talk about "the elephant in the room."  Ellis brought up her cancer diagnosis and treatment.  Nielson told Ellis that Davin had made him aware of it.  Ellis told Nielson she had one more chemotherapy treatment to go.  Ellis told Nielson that she had only missed one day so far and had moved her chemo around so she could schedule to be sick on a Saturday instead of a weekday.  Ellis shared

with Heath what she had shared with Vertachnik, Davin and others -- that her doctor wanted her to keep working and how it was literally keeping her alive. Nielson mentioned that Davin had told him that as well.

24.     **In the March 21 meeting, Ellis told Nielson that her last chemotherapy treatment was scheduled for March 28th, the following Monday.** Ellis told Nielson that after that the next step in her cancer treatment that she was concerned about was radiation treatment, because it would be required daily (Monday through Friday) for potentially 6 weeks. Ellis told Nielson it only takes a lunch break to do it, but that it would make travel impossible. Ellis told Nielson that she might skip radiation altogether, as she told others, because she didn't want it to negatively impact her job. Later Ellis realized that it was dangerous to her survival and stupid of her to be thinking that way, but with only an 8% chance of reoccurrence in 5 years, it was something she felt she needed to consider to protect her job with BRCC. **When Ellis told Nielson that she might skip radiation treatments, Nielson signaled to Ellis that he viewed her efforts to attend radiation treatments negatively by his failure to reply that she should go ahead with the radiation treatments.** At this meeting Nielson did not assert that Ellis was in any way to blame for the soil report misconduct or negligence by Truong. Nielson did not even ask Ellis how such a problem could be avoided in the future.

25.     On March 24, 2022, Ellis learned of more misconduct or negligence by Truong. Ellis learned that in an agreement Truong signed and dated February 8, 2021, Truong, who was not authorized to sign behalf of BRCC, signed a pricing agreement with a geotech company, Terracon, but still did not order the soil samples. Ellis reported this when she learned it.

26.     On Friday, March 25, 2022, Neilson had a phone call with Ellis and Dan Kappernick. Kappernick (who had previously reported to Davin) was also a new report to Neilson.

Neilson told them he wanted a meeting at 8 am on Monday, that it was mandatory, and that they would go through the pipeline store by store.  **Nielson said unless it was for a marriage or a funeral, everyone must attend or not show up to work again at all.  As he said this, Nielson was aware that Monday was a day scheduled for Chemo for Ellis.  Ellis had told Nielson that on March 21, 2022, but he nonetheless threatened Ellis with termination if she did not attend the Monday meeting.)**  Ellis rescheduled her chemo and attended the Monday, March 28, 2022 meeting.

27.     At the Monday, March 28 meeting Ellis and others discussed the 31 operating periods that had been lost (and previously reported to Nielson and Davin) because Truong failed to order the soil reports.  At the meeting they went through the pipeline store by store.  Over and over again, the Construction Project Managers (CPMs) told Nielson that the reports that had now been ordered on March 21, were due back within 5 to 7 weeks as confirmed by Terracon. So Mr. Nielson learned from the staff that the delayed store openings were caused solely by delays in geotech soil sample orders.  The whole team (Ellis's team) explained that this was the result of Truong's failure not only to do the work, but his continual lies (or failure to tell the truth) at every meeting about specific milestone dates that impact forecasted store openings.

28.     Nielson never talked to Ellis about the Truong misconduct/mistake situation after the Monday, March 28 meeting.

29.     On April 15, 2022 Ellis met with BRCC's new HR person, Linda Brandt.  It seemed like a friendly, catch-up meeting.  Brandt asked Ellis how things were going with Heath (referring to Heath Nielson).

30.     Ellis replied that by her asking the question, she assumed not well.  Ellis believed she was engaging in protected activity as she spoke to Brandt, complaining of disability, sex, race

and age discrimination.  Ellis told Brandt that Nielson, a young, white guy, was being dismissive of her and avoiding her, that Nielson wasn't really interacting with her, and that Nielson had a pattern of canceling meetings with her and failing to address her emails.  Ellis knew that young Nielson was far less qualified than Ellis herself.   Ellis concluded based on subsequent events that Brandt shared her complaints with Nielson.  BRCC understood Ellis's complaints about the way Nielson was treating Ellis to be complaints about discrimination.  Brandt and Ellis agreed that Ellis should have a discussion with Nielson.  That was Ellis's intention following her April 15, 2022 meeting with Brandt, but Nielson cancelled the one-on-one meeting with Ellis that was scheduled.

31.     Brandt told Ellis she had had a conversation with Nielson and asked Ellis to take her through what happened with the store operating period change (referring to the soil reports Truong failed to order).  Ellis explained what Truong had done, failed to do, and his lies.  Ellis added, "Done again, I don't know what I could have done except to do his job myself."  Ellis said, they relied on someone to be competent and at a minimum honest.  Neither Ms. Brandt nor anyone at BRCC ever suggested to Ellis that she was wrong in her assessment of the situation.

32.     Brandt asked Ellis what she thought happened with Truong.  Ellis told Brandt it confused her – that on the one hand Truong did a great job with the prototype and then failed on "simply ordering the geotechs – it's literally in an email."  No one ever came to Ellis with an investigation of the Truong misconduct/mistake or with an investigation of Ellis or others. The Truong misconduct/mistake was not Ellis's.

33.     Before Ellis was told of her upcoming termination, she received information that Truong's misconduct/mistake has been quantified as having from $1.8 to $2.4 million negative impact on BRCC's revenue.  Ellis also had heard that someone, or some employees at BRCC made

an $8 million mistake, but Ellis did not learn the details or find out what, if anything, was done to those responsible.

34.     On the morning of April 25, 2022, Ellis received a text message from Davin, asking if she could chat at 5 pm.  Ellis responded immediately, "of course."  An invitation for a video-meeting came immediately, for just Davin and Ellis.  About 20 minutes before the meeting, Brandt (of HR) was added to the invite.  Ellis learned at the meeting that the meeting was called to tell her that she was being fired.

35.     Ellis's termination meeting began at about 5 pm on April 25, 2022.    The participants (in the video call) were Davin, Brandt, and Ellis.  Davin started the meeting by saying: "Hey Kim. Looks like I pulled the short straw and am the one that has to inform you that we are separating you from the company.  The Board has lost confidence in you so that puts us here. I put up a good fight for you but this is the decision the Board made."

36.  Ellis replied that she was surprised and thought it was unfair.  Ellis said, "The full body of my work can't have been considered. I have 45 plus deals approved since I started and busted my ass getting us here." Davin replied, "I know, Kim.  Heath also wants to bring his own guy in. We are interviewing now."  Davin then told Ellis what BRCC was prepared to offer her.  Davin said, '**We realize you have cancer** and want to make sure you can take care of your health, so we are going to pay for one year of COBRA for you."  He added that BRCC would provide 6 months of pay and accelerate Ellis's 2022 stock vesting.   Davin stated, "This isn't intended to be immediate.  We would want you to transition your work over the next 2 to 4 weeks or whatever works best for you."  Davin added, "Linda is going to send you all this in a document tonight when we're done."

37.     Brandt told Ellis she would email the severance agreement to her when everyone hung up.  Ellis said, "I got to go," and hung up in tears.  Ellis felt crushed, terrified, and humiliated.  During the termination meeting on April 25, 2022, BRCC did not assert that its termination of Ellis was for just cause.  BRCC has never asserted that its termination of Ellis was for just cause.  BRCC lacked just cause for terminating the employment of Ellis.

38.     At 7:38 PM, Brandt sent Ellis an email, attaching a proposed "Separation, Release and Severance Agreement."  In this proposed agreement, BRCC made an unsuccessful attempt to have Ellis release BRCC from her ADEA claims.  When BRCC proposed this release of Ellis's ADEA rights, Ellis had not yet made any claim of age discrimination against BRCC.  This shows that BRCC knowingly violated the ADEA or recklessly disregarded whether its conduct toward Ellis was prohibited by the ADEA. *Palasota v. Hagger Clothing Co.,* 499 F.3d 474, 482 (5th Cir. 2007).

## ELLIS FILES AN EEOC CHARGE AND RECEIVES A RIGHT TO SUE LETTER

39.     On May 17, 2022, Ellis filed charge of discrimination and retaliation against BRCC with the United States Equal Employment Opportunity Commission and the Texas Workforce Commission on Civil Rights.   In addition to the EEOC charge itself, Ellis filed Attachment A, a 7-page, single-spaced description of her claims, including this Discrimination Statement:

>         I believe I have been discriminated against by BRCC because of my disability and/or regarded as disability in violation of the Americans with Disabilities Act, as Amended and the Texas Commission on Human Rights Act, TEX. LABOR CODE, § 21.001 *et seq.*  In addition, BRCC has discriminated against me because of my race in violation of 42 U.S.C. Sections 1981 and 2000e, et seq., and the Texas Commission on Human Rights Act, TEX. LABOR CODE, § 21.001 *et seq.*  Further, BRCC has discriminated against me because of my sex in violation of 42 U.S.C. Section 2000e and the Texas Commission on Human Rights Act, TEX. LABOR CODE, § 21.001 *et seq.*   Further, BRCC has discriminated against me because of my age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (the ADEA) and the Texas Commission on Human Rights Act, TEX. LABOR CODE, § 21.001 *et seq.*

The EEOC issued a notice of right to sue letter on June 13, 2022. Ellis is filing this suit within 90 days of her receipt of the notice. Ellis has exhausted all the necessary administrative prerequisites for this lawsuit under Title VII, the ADA, and the ADEA.  There is no valid and/or enforceable arbitration agreement between BRCC and Ellis covering the subject matter of any of the claims in this action.

## BREACH OF CONTRACT

40.     BRCC and Ellis are parties to a contract.  The contract is an employment agreement dated July 1, 2021 (hereinafter "the Employment Agreement").   Under the Employment Agreement, Ellis has the title of Sr. Vice President, Development, reporting directly to the Co-Chief Executive Officer, Tom Davin.  Under the Employment Agreement, Ellis is entitled to Cash Compensation in the form of an annual salary, to be eligible to participate in BRCC's Annual Incentive Plan and Long-Term Incentive Plan, and to be eligible to participate in a number of Company-sponsored benefits, including but not limited to unlimited PTO (paid time off).  The Employment Agreement between BRCC and Ellis specifically limits BRCC's right to terminate Ellis to the existence of "just cause" for termination.  The employment agreement states:

> **Termination.**  The Company reserves the right to terminate the employment of any employee **for just cause** at any time without notice and without payment in lieu of notice.  The Company will be entitled to terminate your employment for any reason **other than for just cause**, upon providing to you such minimum notice as required by law."  (Emphasis added.)

BRCC unilaterally and solely drafted the Employment Agreement.  The Employment Agreement also provides that BRCC cannot amend or modify the just cause protection it provides Ellis "except by an express written agreement signed by both you and a duly authorized officer of the Company."

41.     BRCC breached the Employment Agreement in early March 2022, when Davin informed Ellis that Ellis would now report to a new hire at BRCC – Heath Nielson.  Nielson started serving as BRCC's Chief Retail Officer in March 2022.  The term of the Employment Agreement that Ellis would "report directly to the Co-Chief Executive Officer, Tom Davin," is a material provision of the Employment Agreement, a provision upon which Ellis relied in accepting the offer of employment with BRCC.

42.     BRCC breached the Employment Agreement again when it terminated the employment of Ellis without just cause on April 25, 2022, effective at the end of May 31, 2022. The provisions of the Employment Agreement that provide that BRCC cannot terminate the employment of Ellis without just cause and that provide that the contract cannot be amended or modified except by an express written agreement signed by both Ellis and a duly authorized officer of the Company are material provisions of the Employment Agreement, provisions upon which Ellis relied in accepting the offer of employment with BRCC.

43.     Ellis made written presentment of her breach of contract claim to BRCC on or about May 17, 2022.

## CAUSES OF ACTION

### A.     COUNT ONE:  DISABILITY DISCRIMINATION

44.     Ellis incorporates by reference Paragraphs 1 through 43.

45.     BRCC's acts and omissions, including but not limited to BRCC's failure to promote Ellis to Chief Retail Officer in March 2022 and its termination of Ellis on April 25, 2022, with her last day of employment as May 31, 2022, were because of Plaintiff's disability or perceived (regarded as disability) – breast cancer.   These acts and omissions constitute a willful, continuing violation of the ADA.

46.     Due to Defendant's wrongful and illegal acts and omissions Plaintiff has suffered, and continues to suffer, reputational damage, mental anguish damages, and other damages including but not limited to lost wages and compensation, both past and future, and the value of fringe benefits, both past and future.

47.     Defendant's unlawful acts and omissions referenced in paragraphs 1 through 45 were malicious, thereby entitling Plaintiff to punitive damages.

48.     Defendant's unlawful acts and omissions referenced above in paragraphs 1 through 46 have caused Plaintiff to retain the services of the undersigned counsel to pursue her federal rights in this action.  Plaintiff seeks her reasonable attorneys' fees, expert fees, and costs in this matter.   Plaintiff is entitled to attorneys' fees and costs of suit under 42 U.S.C. §§ 12101, *et seq.* and 42 U.S.C. §§ 1988.

**B.     COUNT TWO:  AGE DISCRIMINATION**

49.     Ellis incorporates by reference paragraphs 1 through 48.

50.     BRCC's acts and omissions, including but not limited to BRCC's failure to promote Ellis to Chief Retail Officer in March 2022 and its termination of Ellis on April 25, 2022, with her last day of employment as May 31, 2022, were because of Plaintiff's age.  These acts and omissions constitute a willful, continuing violation of the ADEA.

51.     Due to Defendant's wrongful and unlawful acts and omissions, Plaintiff has suffered, and continues to suffer, reputational damage, and other damages including but not limited to lost wages and compensation, both past and future, and the value of fringe benefits, both past and future.

52.     Defendant's acts and omissions referenced in paragraphs 1 through 50 were willful, thereby entitling Plaintiff to liquidated damages under 29 U.S.C. § 626 (b).

53.     Defendant's acts and omissions referenced above in paragraphs 1 through 51 have caused Plaintiff to retain the services of the undersigned counsel to pursue her federal rights in this action.  Plaintiff seeks her reasonable attorneys' fees, expert fees, and costs in this matter.  Plaintiff is entitled to attorneys' fees and costs of suit under 29 U.S.C. § 626 (b) and 42 U.S.C. §§ 1988.

C.      **COUNT THREE:  SEX DISCRIMINATION**

54.     Ellis incorporates by reference paragraphs 1 through 53.

55.     Defendant's acts and omissions as described above constitute unlawful discrimination on the basis of sex in violation of Title VII, 42 U.S.C. Section 2000e *et seq.*

56.     As a result of Defendant's unlawful acts and omissions, Ellis has suffered, and continues to suffer, reputational damage, mental anguish damages, and other damages including but not limited to lost wages and compensation, both past and future, and the value of fringe benefits, both past and future.

57.     Defendant's conduct as described above constitute malicious violations of Title VII thus entitling Ellis to punitive damages.

58.     Ellis is also entitled to reasonable attorneys' fees, expert witness fees, and costs under 42 U.S.C. §2000e-5(k) and 42 U.S.C. §§ 1988.

D.      **COUNT FOUR:  RACE DISCRIMINATION**

59.     Ellis incorporates by reference paragraphs 1 through 58.

60.     Defendant's acts and omissions as described above constitute unlawful discrimination on the basis of race in violation of Title VII, 42 U.S.C. Section 2000e *et seq.* and the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended.

61.     As a result of Defendant's unlawful acts and omissions, Ellis has suffered, and continues to suffer, reputational damage, mental anguish damages, and other damages including

but not limited to lost wages and compensation, both past and future, and the value of fringe benefits, both past and future.

62.     Defendant's conduct as described above constitutes malicious violations of Title VII and the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended, thus entitling Ellis to punitive damages.

63.     Ellis is also entitled to reasonable attorneys' fees, expert witness fees, and costs under 42 U.S.C. §2000e-5(k) and 42 U.S.C. §§ 1988.

**E.     COUNT FIVE:  RETALIATION**

64.     Ellis incorporates by reference paragraphs 1 through 63.

65.     BRCC's actions, including but not limited to BRCC's failure to promote Ellis to Chief Retail Officer in March 2022 and its termination of Ellis on April 25, 2022, with her last day of employment as May 31, 2022, were because of Plaintiff's protected activity.   These acts and omissions constitute a willful, continuing violation of the ADA, Title VII, the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended, and the ADEA.

66.     Due to Defendant's wrongful and illegal acts and omissions, Plaintiff has suffered, and continues to suffer, reputational damage, mental anguish damages, and other damages including but not limited to lost wages and compensation, both past and future, and the value of fringe benefits, both past and future.

67.     Defendant's actions referenced in paragraphs 1 through 66 were willful, thereby entitling Plaintiff to liquidated damages under 29 U.S.C. § 626 (b).

68.     Defendant's acts and omissions referenced above in paragraphs 1 through 66 have caused Plaintiff to retain the services of the undersigned counsel to pursue her federal rights in this action.  Plaintiff seeks her reasonable attorneys' fees, expert fees, and costs in this matter.  Plaintiff

is entitled to attorneys' fees and costs of suit under the ADA, Title VII, the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended, the ADEA, and 42 U.S.C. §§ 1988.

**F.**     **COUNT SIX:  BREACH OF CONTRACT**

69.     Ellis incorporates by reference paragraphs 1 through 68.

70.     A written contract existed between Ellis and BRCC, namely, the Employment Agreement.

71.     Adequate consideration supported the contract between Ellis and BRCC, and the parties mutually agreed on all material terms. All conditions precedent have occurred or been performed, and Ellis performed under the Employment Agreement. BRCC is not excused from performing under the contract.

72.     The Employment Agreement provides Ellis has the title of Sr. Vice President, Development, reporting directly to the Co-Chief Executive Officer, Tom Davin.  BRCC breached the Employment Agreement in early March 2022, when Davin informed Ellis that Ellis would now report to a new hire at BRCC – Heath Nielson and when BRCC carried out that change.  As a consequence, Ellis has suffered cognizable losses, for which she now sues.

73.     The Employment Agreement provides that BRCC cannot terminate the employment of Ellis without just cause and that that the contract cannot be amended or modified except by an express written agreement signed by both Ellis and a duly authorized officer of the Company.  BRCC breached the Employment Agreement when it terminated the employment of Ellis without just cause on April 25, 2022 and effective at the end of May 31, 2022.  The Employment Agreement provides that BRCC cannot terminate the employment of Ellis without just cause and that the Employment Agreement cannot be amended or modified except by an

express written agreement signed by both Ellis and a duly authorized officer of the Company. As a consequence, Ellis has suffered cognizable losses, for which she now sues.

74.     BRCC willfully violated the foregoing provisions of the Employment Agreement and is therefore liable for consequential and incidental damages. Ellis suffered reputational damages and the time and opportunity cost of Ellis's participation in this lawsuit.  Consequently, Ellis seeks these consequential and incidental damages.

75.     Ellis is entitled to recover her attorney's fees under TEX. CIV. PRAC. & REM. CODE § 38.001 because its claim is on a written contract. Ellis perfected her right to fees by presenting BRCC with a claim for payment on the contract by means of written presentment. More than 30 days have elapsed and BRCC has not tendered payment. Due to BRCC's breach, Ellis was required to retain the services of counsel to prosecute this action.

## JURY DEMAND

76.     Ellis requests a jury trial on all issues, claims, actions, and defenses in this case.

## PRAYER FOR RELIEF

WHEREFORE, Ellis prays that BRCC be summoned to appear and answer, and that on final trial, judgment be granted against BRCC giving Ellis:

a.     The following injunctive relief:

   (i)     Requiring BRCC to take all actions necessary to reinstate Ellis to the position of Chief Retail Officer of BRCC with the full benefits and compensation of such position and if reinstatement is feasible and ordering injunctive relief that protects Ellis from any retaliation for having made her complaints herein.

   (ii)    Requiring BRCC to provide training on the priority and importance of avoiding discrimination on the basis of disability (actual or regarded as), age, sex and/or race, and unlawful retaliation, with the training to be tailored to the problems, deficiencies, and gaps that the evidence shows;

   (iii)   Requiring BRCC to periodically report in writing on the manner of

compliance with the terms of any final order for non-monetary relief – with the reporting to be tailored to the evidence;

(iv)    Requiring BRCC to deliver a copy of any Court Order in this matter to the Equal Employment Opportunity Commission, the Texas Commission on Human Rights, and to the CEO of BRCC within fifteen days after the entry of such Order;

(v)     Requiring BRCC to provide all current employees of BRCC a **NOTICE TO EMPLOYEES** that sets forth in full (i) this Complaint; (ii) any Court Order in this matter, and (iii) the full provisions of all federal and Texas laws BRCC has been found to have violated, and

(vi)    Requiring each of the officers and/or employees of BRCC included by name in this Original Complaint, no later than two months from the date of the Court's Final Order in this matter to (1) attend and participate in good faith at the expense of BRCC at least a one-week bona fide training program, offered by a qualified third-party training entity, as to United States and Texas laws prohibiting retaliation and/or discrimination on the basis of disability (actual or regarded as), sex, age, and/or race and (ii) file a certificate of compliance with the United States Equal Employment Opportunity Commission and the Texas Workforce Commission certifying successful completion by such officers and/or employees of BRCC of the training, stating the dates of such training and the date of successful completion of such training, and providing the full name, address, and leadership/ownership identity of the third party training entity and the cost of such training;

b.    A declaration that BRCC actions violated the ADA, the ADEA, Title VII, and the Civil Rights Act of 1866 plus individually tailored injunctive relief to address and rectify BRCC's unlawful acts and omissions;

c.    Back pay, including but not limited to, lost wages and other employment benefits;

d.    Equitable relief necessary to place Ellis in the position that she would have held but for BRCC's unlawful and/or wrongful acts and omissions; and, if such relief be not feasible, front pay;

e.    Injunctive relief necessary to permanently and forever enjoin BRCC from discriminating and retaliating against Ellis and others who complain of disiability, age, race or sex discrimination;

f.    Actual and compensatory damages, including but not limited to reputational damages;

g.    Consequential and/or incidental damages;

h.      Liquidated damages under the ADEA and punitive damages under Title VII and the ADA;

i.      Uncapped compensatory and punitive damages under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended;

j.      Prejudgment and post-judgment interest;

k.      Attorney's fees, expert fees, and costs of suit;

l.      Such other and further legal and equitable relief to which Ellis may justly be entitled.

DATED:      June 22, 2022            Respectfully submitted,

                                    GILLESPIE SANFORD LLP
                                    4803 Gaston Avenue
                                    Dallas, Texas 75246
                                    Tel.:   (214) 800-5111
                                    Fax:    (214) 838-0001


                                    By: */s/ Hal K. Gillespie*
                                        Hal K. Gillespie
                                        *Attorney-in-Charge*
                                        Texas Bar No. 07925500
                                        hkg@gillespiesanford.com

                                    ATTORNEYS FOR KIM ELLIS